1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

9

10

11

12

13

14

DEVINGTON CONDOMINIUM
ASSOCIATION a/k/a/ DEVINGTON
HOMEOWNERS ASSOCIATION,

                            Plaintiff,

v.

STEADFAST INSURANCE COMPANY and
AMERICAN SAFETY RISK RETENTION
GROUP, INC.,

                            Defendants.

No. C06-1213 MJP

ORDER DENYING DEFENDANT
AMERICAN SAFETY'S MOTION
FOR SUMMARY JUDGMENT
REGARDING PRIORITY OF
COVERAGE

15

16

17

18

       This matter comes before the Court on Defendant American Safety Risk Retention Group Inc.'s motion for summary judgment regarding priority of coverage. (Dkt. No. 32.)  Having considered the parties' briefs, and all documents submitted in support thereof, the Court DENIES the motion.

19

**BACKGROUND**

20

21

22

23

24

25

26

       This lawsuit arises out of a construction defect case in which Plaintiff, Devington Condominium Association ("Devington"), sued its general contractor, Reed Construction, for defective construction and workmanship during a renovation of the Devington Condominiums.  Reed had three commercial general liability ("CGL") carriers affected by Devington's claims.  North American Capacity Insurance Company, successor to Commercial Underwriters Insurance Company ("NAC"), issued a CGL policy to Reed Construction for the policy period of 10/15/98 – 3/10/00. (Soha Decl., Ex. 3.)  Defendant American Safety Risk Retention Group ("American Safety") issued commercial general liability insurance policies to Reed Construction from 03/10/00 – 06/15/01.

ORDER - 1

1   (Fisher Decl., Ex. 1.)  Defendant Steadfast Insurance Company issued a CGL policy from 08/10/01 –

2   08/01/03. (Soha Decl., Ex. 1-2.)

3       In October 2004, Devington sued Reed Construction and Moberg Epstein Architects in state

4   court, alleging that defects in workmanship in a 1999 exterior renovation project on the condominium

5   caused water intrusion and resulting damage.  In May 2006, Devington settled its claims against

6   Reed, which confessed to a judgment of $1,375,000.  As part of the settlement, Reed and NAC

7   assigned their indemnity and contribution rights to Devington.  NAC contributed $750,000 towards

8   the settlement.

9       In May 2006, Devington brought suit against Steadfast and American Safety.  The Court has

10  already dismissed all claims against Defendant Steadfast because the Steadfast policy specifically

11  excluded coverage for the type of exterior work that caused the damage here. (Dkt. No. 42).  In this

12  summary judgment motion, Defendant American Safety asks the Court to rule, as a matter of law, the

13  following: (1) the insurance policy issued by NAC is primary; (2) the insurance policy issued by

14  American Safety is excess above NAC's primary limits of $1 million; and (3) because the policy

15  issued by American Safety is excess, Plaintiff — as assignee of NAC — does not have a right of

16  contribution against American Safety. (Dkt. No. 32, p. 2).  Plaintiff has responded. (Dkt. No. 34).

**DISCUSSION**

17

**I.      Summary Judgment Standard**

18

19      This matter comes before the Court on American Safety's motion for summary judgment.

20  Summary judgment is not warranted if a material issue of fact exists for trial.  Warren v. City of

21  Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996).  The underlying facts

22  are viewed in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co.

23  v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "Summary judgment will not lie if . . . the evidence

24  is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty

25  Lobby, Inc., 477 U.S. 242, 248 (1986).  The party moving for summary judgment has the burden to

26  show initially the absence of a genuine issue concerning any material fact.  Adickes v. S.H. Kress &

ORDER - 2

1   Co., 398 U.S. 144, 159 (1970).  However, once the moving party has met its initial burden, the

2   burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an

3   element essential to that party's case, and on which that party will bear the burden of proof at trial.

4   Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  To discharge this burden, the nonmoving

5   party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine

6   issue for trial.  Id. at 324.

7   **II.      Priority of Coverage**

8          Under Washington law, insurance policies are construed as contracts and the court interprets

9   the policy as a matter of law.  Nordstrom, Inc. v. Chubb & Son, Inc., 54 F.3d 1424, 1429 (9th Cir.

10  1995).  The parties' priority of coverage dispute focuses on the "other insurance" clauses in their

11  respective policies.  The "other insurance" clause in the NAC policy states as follows:

12              **4.      Other Insurance**
                If other valid and collectible insurance is available to the insured for a
13              loss we cover under Coverages A or B of this Coverage Part, our
                obligations are limited as follows:
14                  **a.      Primary Insurance**
                This insurance is primary except when b. below applies. If this
15              insurance is primary, our obligations are not affected unless any of the
                other insurance is also primary.  Then, we will share with all that other
16              insurance by the method described in c. below.
                    **b.      Excess Insurance**
17              This insurance is excess over any of the other insurance, whether
                primary, excess, contingent or on any other basis:
18              (1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk
                or similar coverage for "your work" . . . .
19
    (Soha Decl., Ex. 3).  The applicable "other insurance" clause in the American Safety policy is found
20
    in an Endorsement to the policy.  That endorsement states, in relevant part:
21
                In consideration of the payment of premiums, it is hereby agreed that the following
22              changes are incorporated into the policy.

23              SECTION IV — COMMERCIAL GENERAL LIABILITY CONDITIONS is
                amended as follows:
24
                Par. 4., Other Insurance is hereby amended as follows:
25                  4.      Paragraph a., Primary Insurance; Paragraph b., Excess
                            Insurance and Paragraph c., Method of Sharing are deleted in
26                          their entirety and the following language is inserted in lieu
                            thereof:

a.    This insurance is primary, except when b. below applies.
b.    This insurance is excess over any other insurance that is valid
      and collectible insurance available to the insured or any
      Additional Insured whether such insurance is primary, excess,
      contingent or on any other basis and regardless of the nature,
      kind, date of issuance or limits of such other insurance available
      to the insured or any Additional Insured.  Our obligation under
      this policy shall not arise until the limits of such other insurance
      are exhausted.

(Fisher Decl., Ex. 1 at 54).

American Safety argues that the "super-escape" clause in its policy (i.e., the language "excess over any other insurance . . . whether such insurance is primary, excess, contingent, or on any other basis") makes the NAC policy "primary" and makes its policy "excess."  Plaintiff argues that the "other insurance" clauses are inapplicable here because the two policies covered different policy periods.  Plaintiff also argues that even if the "other insurance" clauses apply, the NAC policy contains a super-escape clause that cancels out the American Safety super-escape clause.  Plaintiff argues that its policy is not primary because the American Safety policy contains a self-insured retention program ("SIR"), and the SIR is primary.  Finally, Plaintiff argues that American Safety is equitably estopped from arguing that its policy is excess.

### A.    The "other insurance" clauses are not applicable because the policies covered consecutive policy periods.

The two policies at issue here covered different time periods.  NAC provided CGL coverage to Reed Construction from 10/15/98 through 3/10/00.  American Safety provided CGL coverage from 3/10/00 through 6/15/01.  NAC argues that where different policies cover different time periods, neither policy is primary or excess to the other, and the "other insurance" clauses do not apply.  American Safety responds that the difference in policy periods is immaterial here and that the American Safety policy is excess regardless of the fact that the policies covered different periods.

A number of courts have concluded that "other insurance" clauses do not apply in the context of consecutive insurance policies.  For example, in a medical malpractice insurance case, the Fourth Circuit stated that the district court erred when it relied on two policies' "other insurance" clauses to

ORDER - 4

resolve the question of how the insurers should apportion defense costs because "such clauses apply only when the coverage is concurrent." St. Paul Fire & Marine Ins. Co. v. Vigilant Ins. Co., 919 F.2d 235, 241 (4th Cir. 1990); see also Taco Bell Corp. v. Cont'l Cas. Co., 388 F.3d 1069, 1078 (7th Cir. 2004) (noting in dicta that district court should not have relied on "other insurance" clauses to apportion insurance defense costs where policies were successive because successive policies do not insure the same risk); Cont'l Cas. Co. v. Medical Protective Co., 859 S.W.2d 789, 791 (Mo. App. 1993) (holding that "other insurance" provisions have "no application to a loss resulting from series of occurrences over a period of time involving consecutive rather than concurrent insurance coverage"). In addition, legal commentators have argued that "other insurance" clauses only apply in the context of concurrent policies because "while successive policies might insure the same type of risk, they do not insure the same risk" and because applying "other insurance" clauses to successive policies might make insurers liable for damages occurring outside their policy periods. Douglas R. Richmond, Issues and Problems in "Other Insurance," Multiple Insurance, and Self-Insurance, 22 Pepp. L. Rev. 1373, 1376-77 (1995); see also 22 Eric Mills Holmes, Holmes' Appleman on Insurance 2d § 140.1[A] (1998) ("'Other insurance' refers to the existence of other insurers that insure the same risk, for the same benefit of the same entity, during the same period of time."); 3 Law and Prac. of Ins. Coverage Litig. § 38.2 (West 2006) ("To be deemed 'other insurance,' two or more policies must insure the same risk and the same interest over the same period of time."); 1 Insurance Claims and Disputes § 6.47 (West 2006) (noting that "other insurance" clauses should not apply to successive policies).

American Safety attempts to distinguish the above referenced cases on the basis that those cases addressed allocation of a loss among multiple triggered policies that provided the same level of coverage. But the reasoning underlying those cases applies with equal force here. By issuing policies covering different periods of time, NAC and American Safety insured different risks. If the Court looked to the "other insurance" clauses, NAC could be held liable for damage that occurred outside its policy period. In addition, American Safety's argument assumes that the policies provide different

1   layers of coverage.  But American Safety's policy is only excess <u>if</u> the NAC policy (or another

2   insurer's policy) is primary during American Safety's policy period.  American Safety has pointed to

3   no other insurer during its policy period that would make its policy excess regardless of whether

4   NAC's policy is primary.

5          American Safety attempts to avoid the prevailing theory regarding the applicability of other

6   insurance clauses, and argues that the language of its policy makes its policy excess regardless of the

7   policy period.  Its "other insurance" clause states that the American Safety policy is "excess over any

8   other insurance that is valid and collectible insurance available to the insured."  Because Reed

9   Construction had "other insurance that [was] valid and collectible insurance available" to it (i.e., the

10  NAC policy), American Safety argues that its policy is excess over that other insurance.  But as noted

11  above, "other insurance" refers to the existence of other insurers that insure the same risk during the

12  same period of time. Holmes, <u>supra</u>, at § 140.1[A].  Therefore, "other insurance that [was] valid and

13  collectible insurance available" to it only refers to other insurance provided to cover the same time

14  period.

15         American Safety also argues that the phrase "date of issuance" in its "other insurance" clause

16  addresses the issue of policy period and states that the American Safety insurance is excess over any

17  other policy, regardless of policy period.  The policy states: "This insurance is excess over any other

18  insurance that is valid and collectible insurance available to the insured . . . regardless of the . . . <u>date</u>

19  <u>of issuance</u> or limits of such other insurance available." (Emphasis added.)  American Safety equates

20  the phrase "date of issuance" with "policy period".  But "date of issuance" refers to the date the

21  policy was issued, not the dates on which the policy will apply.

22         The Court concludes that "other insurance" clauses do not apply where the at-issue policies

23  provided consecutive rather than concurrent insurance coverage.  Because the NAC and American

24  Safety policies are consecutive policies, American Safety may not rely on its "other insurance" clause

25  to assert that it provided coverage that was excess to NAC's coverage.  Given this conclusion, the

26

ORDER - 6

1    Court need not consider Plaintiff's alternative arguments regarding priority of coverage.  The Court

2    therefore DENIES American Safety's motion for summary judgment.

3            The Clerk is directed to send copies of this order to all counsel of record.

4            Dated this 20th day of March, 2007.

5

6                                                                Marsha J. Pechman

7                                                                United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER - 7